UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| FAMOUS THOMPSON and JAMIE JOHNSON, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF INDIANAPOLIS, Officer BRYAN ) <br> ZOTZ, and Officer JASON ROSS, ) <br> ) <br> Defendants. ) | Case No. 1:15-cv-00074-TWP-TAB |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants City of Indianapolis ("the City"), Bryan Zotz ("Officer Zotz"), and Jason Ross' ("Officer Ross") (collectively, "Defendants") Motion for Summary Judgment. (Filing No. 42.) During a traffic stop by police officers, while riding as a backseat passenger in a vehicle, Plaintiffs Famous Thompson ("Thompson") and Jamie Johnson ("Johnson") (collectively, "Plaintiffs"), were severely injured when Officers Zotz and Ross fired shots into the backseat of the vehicle. The Plaintiffs filed a Complaint against the Defendants, asserting violation of their federal civil rights under the Fourth and Eighth Amendments, as well as excessive force, assault, battery, negligence and intentional infliction of emotional distress under Indiana law. (Filing No. 1.) The Plaintiffs voluntarily withdrew their Eighth Amendment claim (Filing No. 43-6 at 2-3); (Filing No. 43-7 at 2-3), as well as their negligence and intentional infliction of emotional distress claims (Filing No. 48). Therefore, the Motion for Summary Judgment applies only to the Fourth Amendment and the remaining state law claims. For the following reasons, the Court **DENIES** the Defendants' Motion for Summary Judgment.

## I. BACKGROUND

As with any summary judgment motion, the following facts are reviewed in the light most favorable to the Plaintiffs, the nonmoving parties, and the Court draws all reasonable inferences in the Plaintiffs' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009).

In the evening on April 2, 2013, Daniel Veza ("Officer Veza"), with the Indianapolis Metropolitan Police Department, initiated a traffic stop on a red Chevrolet Blazer after he witnessed the vehicle run a stop sign. Officer Veza sent a message to Officer Ross requesting back-up because he believed there were five individuals in the vehicle. *Id*. at 3. As Officer Veza approached the vehicle, he observed that the windows were tinted and instructed the passengers to roll their windows down. *Id* at 1. Officer Veza observed five people inside the vehicle. *Id*. Kevin Somerville ("Sommerville") was in the driver's seat, Trisha Parish ("Parish") was in the front passenger seat, Johnson was sitting behind the driver's seat, William Morris ("Morris") was sitting behind the passenger's seat, and Thompson was sitting between Johnson and Morris. (Filing No. 44 at 2); (Filing No. 43-4 at 12, ¶¶ 9-24).

Officer Veza asked Sommerville for his license and registration. *Id;* (Filing No. 43-4 at 15, ¶¶ 19-21.) Officer Zotz then arrived on the scene and assisted Officer Veza in collecting identification from the passengers. (Filing No. 48 at 2.) All passengers produced identification, except Johnson who stated that she did not have an ID. (Filing No. 44 at 3); (Filing No. 43-2 at 12, ¶ 3-7). Officer Veza returned to his vehicle to run reports on the five occupants. (Filing No. 48 at 2.) By this time, Officer Ross also arrived at the scene. (Filing No. 44 at 3.) While Officer Veza ran the reports, Officer Zotz communicated with the passengers and gathered information

from them. (Filing No. 48 at 2.) Officer Zotz learned about prior arrests involving Morris. *Id*. Officer Zotz began to view Morris as a potential threat. *Id*.

While running the reports on the passengers, Officer Veza learned that Sommerville did not have a valid driver's license and decided to remove the passengers and have the Blazer towed. *Id*. at 2. Officer Veza returned to the Blazer, removed Sommerville, and conducted a pat-down search. (Filing No. 44 at 3); (Filing No. 43-4 at 21, ¶14-16). Officer Zotz removed Parish and conducted a pat-down search. *Id;* (Filing No. 43-4 at 12, ¶12-13). Officer Zotz then began to remove the backseat passengers. (Filing No. 48 at 2.) Officer Zotz ordered Morris to step out of the vehicle. *Id*. Morris attempted to exit the vehicle, but the door did not open. *Id*. at 3. Morris informed Officer Zotz that the door was jammed and would not open. *Id*. Officer Zotz also attempted to open the door near Morris, but he could not get it open. (Filing No. 43-5 at 24 ¶¶ 20-21.) Morris continued trying to open the door. *Id* at 4. Johnson also attempted to open her door, but the door failed to open. *Id*. at 4. Johnson informed the officers that her door would not open. *Id*.

Officer Zotz then said, "show me your hands." *Id*. Thompson raised his hands. *Id.* Officer Zotz pointed his gun and repeated, "show me your hands." *Id.* Thompson continued with his hands raised, and Johnson raised her hands. *Id*. at 4. Morris remained with his hands on the door handle, attempting to get out of the car. *Id*. Morris then began to raise his hands. *Id.* Officer Zotz yelled, "He's got a gun," and shot six times. *Id*. at 5. Officer Ross approached the rear passenger side door, and shot five times. (Filing No. 44 at 6.) Johnson was shot twice, while attempting to exit the vehicle by jumping out of the rear driver's side window. (Filing No. 48 at 5.) Thompson suffered one gunshot wound while jumping to the front of the vehicle. *Id*. at 4. Morris was killed. (Filing No. 1.)

On January 16, 2015, the Plaintiffs collectively filed their Complaint, alleging that Officer Zotz and Officer Ross violated their federal civil rights under the Fourth Amendment, as well as state law claims of excessive force, assault, and battery. (Filing No. 1.) The Plaintiffs also allege that the City is liable for excessive force, assault, and battery under the doctrine of *respondeat superior*. *Id.* On May 31, 2016, the Defendants collectively filed their Motion for Summary Judgment, alleging that the Plaintiffs were not "seized" as required by the Fourth Amendment, and Officers Zotz and Ross lacked the necessary intent to be held liable for the state law claims. The Defendants further allege that the City is entitled to summary judgment because the underlying state law claims fail as a matter of law. (Filing No. 42.)

## II.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where there exists "no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007) (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with

appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

The Defendants moved for summary judgment on the Plaintiffs' Fourth Amendment claims of excessive force and unreasonable seizure, asserting that the Plaintiffs were not "seized" as required by the Fourth Amendment. The Defendants also moved for summary judgment on the Plaintiffs' state law claims, alleging that Officers Zotz and Ross lacked the necessary intent to be held liable for assault, battery, and excessive force. The Defendants assert that the City is entitled to summary judgment because the underlying state law claims fail as a matter of law.

**A.     Excessive Force and Unreasonable Seizure under the Fourth Amendment**

The Defendants assert that Officers Zotz and Ross are entitled to qualified immunity against the Fourth Amendment claims alleged by the Plaintiffs. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity gives government officials breathing room to make reasonable but mistaken

5

judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (citation and quotation marks omitted).

The parties acknowledge that there are disputed facts. The Defendants' version is that Officers Zotz and Ross saw Morris with a gun, that Officer Zotz struggled with Morris over a gun before he and Officer Ross collectively fired eleven rounds into the backseat of the vehicle. The Plaintiffs testified that they never saw Morris with a gun, that Morris was attempting to open the car door when he was shot, and the officers did not grab Morris' arm or wrestle over a gun.

To determine whether qualified immunity applies, the Court must determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court also determines "whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*

### 1. <u>Violation of a Constitutional Right</u>

The Plaintiffs allege that the Defendants violated their Fourth Amendment right when the Defendants unreasonably seized the Plaintiffs and used excessive force. Excessive force claims are analyzed using the Fourth Amendment's "reasonableness" standard in the context of "an arrest, an investigatory stop or any other type of seizure." *Stainback v. Dixon,* 569 F.3d 767, 771 (7th Cir. 2009). The Fourth Amendment protects against the use of force that is not "objectively reasonable." *Kinney v. Ind. Youth Ctr.*, 950 F.2d 462, 465 (7th Cir. 1991). The "right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, this right is not without limits; a "police officer's use of force is unconstitutional if, judging from the totality of

circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (citation and quotation marks omitted).

Fourth Amendment unreasonable seizure claims, like excessive force claims, are analyzed in light of the totality of the circumstances to determine the objective reasonableness of the seizure. To determine the reasonableness and therefore the constitutionality of a seizure, courts must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) (citation and quotation marks omitted). In considering this balance, whether under an excessive force or unreasonable seizure claim, the court considers the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. When considering this balance, the court views the circumstances "from the perspective of a reasonable officer on the scene." *Id*.

The alleged excessive force and unreasonable seizure consists of the initial traffic stop, Officers Zotz pointing a gun toward the crowded backseat and ordering the Plaintiffs to show their hands as they attempted to exit the vehicle, and Officers Zotz and Ross severely injuring the Plaintiffs when they collectively fired eleven shots into the backseat of the vehicle. The Defendants argue that the Plaintiffs were not seized because the Plaintiffs' injuries were unintentional. The Defendants also claim that Officers Zotz and Ross did not use unreasonable force against the Plaintiffs when firing shots into the backseat of the vehicle because they were aiming at Morris.

7

The Plaintiffs rely on several Unites States Supreme Court cases when asserting that a person is clearly seized within the meaning of the Fourth Amendment only if "a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (explaining that the following circumstances might indicate a seizure, even where the person did not attempt to leave: the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled); *see also Brendlin v. California*, 551 U.S. 249, 257 (2007) (holding that passengers of automobiles that are pulled over by a police officer for a traffic stop are seized under the Fourth Amendment); *Colorado v. Bannister*, 449 U.S. 1 (1980) (stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the Fourth Amendment); *Berkemer v. McCarthy*, 468 U.S. 420, 436-37 (1984); *United States v. Hensley*, 469 U.S. 221, 226 (1985). The Plaintiffs persuasively argue that no reasonable person would believe that they are free to leave when they are pulled over by a police officer for a traffic stop and ordered by an officer to show their hands at gunpoint.

The Plaintiffs also argue that Officers Zotz and Ross used excessive force when they fired shots into the backseat of the vehicle, severely injuring the Plaintiffs. Under the factors articulated in *Graham*, questions of fact remain that should be resolved by a jury. The severity of the crime at issue, running a stop sign, was extremely minimal. This traffic violation did not involve physical violence or damage to property. The Plaintiffs also did not pose an immediate threat to the safety of the officers, as it is undisputed that they complied with the officers' commands and raised their hands. Whether it was objectively reasonable for Officers Zotz and Ross to perceive Morris as non-compliant and a threat to the officers' safety that warranted them to collectively fire eleven

shots into the backseat of the vehicle, severely injuring the Plaintiffs, is highly disputed and an issue for trial. Whether the officers were aiming only at Morris and accidently shot the Plaintiffs is also disputed and an issue for trial.

Upon review of the designated evidence and the totality of the circumstances, the reasonableness of Officers Zotz's and Ross' actions during the encounter with the Plaintiffs should be determined by the trier of fact. Therefore, the Plaintiffs' Fourth Amendment claims for excessive force and unreasonable seizure with respect to Officers Zotz and Ross cannot be disposed of by summary judgment.

### 2. **Clearly Established Right**

The Plaintiffs' Fourth Amendment rights must also be clearly established. "To be clearly established, at the time of the challenged conduct, the right's contours must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Humphries v. Milwaukee Cnty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citation and quotation marks omitted). "While a case directly on point is not required, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotation marks omitted).

In the context of a claim for excessive force, "there is no doubt that [case law] clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." *Saucier*, 533 U.S. at 201–02.

> Yet that is not enough. Rather, we emphasized in *Anderson* "that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." 483 U.S. at 640. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

*Id.* at 202.

The Plaintiffs respond to Officers Zotz's and Ross' claim to qualified immunity by asserting that "in an obvious case" the general objective standards of reasonableness outlined in *Tennessee v. Garner* and *Graham v. Connor* can "clearly establish" violation of the Fourth Amendment, even without a body of relevant case law." *Brousseau v. Haugen*, 543 U.S. 194, 199 (U.S. 2004). There is no dispute that it is unreasonable for police officers to use excessive force to detain an individual or to seize an "unarmed, nondangerous suspect by shooting him dead." *Tennessee,* 471 U.S. at 11. The Plaintiffs previously relied on several United States Supreme Court cases when arguing that they were clearly seized under the Fourth Amendment. The Plaintiffs argue that they were not armed and dangerous and they complied with the officers' orders. The Plaintiffs further contend that Morris did not have a gun, Morris did not point a gun at the officers, nor did Officer Zotz struggle with Morris over a gun before Officers Zotz and Ross fired rounds into the backseat of the Blazer, severely injuring the Plaintiffs. The Plaintiffs assert that under these facts, it is clear that Officers Zotz and Ross violated their Fourth Amendment rights, because the officers were not in imminent danger and, as such, could not use deadly force.

In considering the issue of qualified immunity, the Plaintiffs have shown that force was "so plainly excessive under the circumstances that a reasonable officer would have known of the constitutional violation" and that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Unreasonable seizure and the use of excessive force are understood to be constitutional violations, and the Plaintiffs' evidence and facts show that they were clearly seized and the conduct and force used by Officers Ross and Zotz were so clearly excessive to defeat the claim for qualified immunity. Therefore, the Court determines that the evidence does not support the Defendants' qualified immunity claim for Officers Zotz and Ross.

    **B.**    <u>**State Law Tort Claims**</u>

        The Defendants also moved for summary judgment on the Plaintiffs' state law tort claims for assault, battery, and excessive force against Officers Zotz and Ross and against the City under the doctrine of *respondeat superior*. Under Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest. Ind. Code § 35-41-3-3(b). Indiana's excessive force standard effectively parallels the federal standard outlined above. *See O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. App. 2000); *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 866 (S.D. Ind. 2006). "Any claim that excessive force was used by a police officer when making an arrest is analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution." *Brooks v. Anderson Police Dep't*, 975 N.E.2d 395, 399 (Ind. Ct. App. 2012).

        The Defendants assert that they are entitled to summary judgement on the Plaintiffs' state law claims for assault, battery, and excessive force because they did not intend to severely injure the Plaintiffs when they fired shots into the backseat of the vehicle. The Plaintiffs argue that there are genuine issues of material fact regarding Officers Zotz's and Ross' use of excessive force against the Plaintiffs. Based on the earlier analysis of the Plaintiffs' Fourth Amendment claims for excessive force and unreasonable seizure, the Court determines that the Defendants are not entitled to summary judgment on the Plaintiffs' state law tort claims for assault, battery, and excessive force because there are questions of material fact that remain to be resolved by a jury. If a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery. *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010); *Crawford v. City of Muncie*, 655 N.E.2d 614, 622 (Ind. App. 1995); *City of South Bend v. Fleming*, 397 N.E.2d 1075, 1077 (Ind. App. 1979). Immunity against state tort claims under the Indiana Tort Claims Act, Ind. Code §

34-13-3-3(8), does not apply to excessive force claims. *See Fidler*, 428 F. Supp. 2d at 866–67; *Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993). Accordingly, the Plaintiffs' Indiana tort claims remain for a jury to decide.

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** the Defendants' Motion for Summary Judgment (Filing No. 42).

**SO ORDERED.**

Date: 9/22/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher D. Wyant
WYANT LAW OFFICE
chris@wyantlawoffice.com

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov

Pamela G. Schneeman
OFFICE OF CORPORATION COUNSEL
pamela.schneeman@indy.gov

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ejm@rucklaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com